IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL KNOX, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 06 C 1158 |
| METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO and PATRICK FOLEY, Individually and as Personnel Director of the Metropolitan Water Reclamation District of Greater Chicago, | ) Judge Virginia M. Kendall |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Daniel Knox ("Plaintiff") brings this action under 42 U.S.C. § 1983 alleging that Defendant Metropolitan Water Reclamation District of Greater Chicago ("District") and its Director of Personnel, Defendant Patrick Foley ("Foley"), discriminated against him on the basis of race. The District and Foley, in his official capacity, have moved to dismiss Plaintiff's Second Amended Complaint for failure to state a claim under Rule 12(b)(6). Foley answered the claim brought against him personally. Plaintiff's claim against the District survives because he has alleged facts that plausibly suggest a widespread practice of discrimination that constitutes a custom. Plaintiff's claim against Foley, in his official capacity, is dismissed because it duplicates the claim against the District.

**PLAINTIFF'S ALLEGATIONS**

Plaintiff is an African-American male. 2d Am. Compl. ¶ 5. Plaintiff applied for the position of hoisting engineer with the District. *Id.* ¶ 8. On October 3, 2004, Plaintiff

participated in an examination for hoisting engineer candidates which consisted of two parts: (1) a written test and; (2) a performance test. *Id.* ¶¶ 10, 37. Candidates who receive the highest scores on the examination are placed on the "A" list and are the first applicants hired when a position for a hoisting engineer becomes available. *Id.* ¶¶ 17, 18. Plaintiff passed the written test and proceeded to take the performance test. *Id.* ¶ 12. In December 2004, Plaintiff was notified that he had not passed the performance test. *Id.* ¶ 20.

Plaintiff appealed the results of the performance test to the Civil Service Board ("CSB"). *Id.* ¶ 37. The CSB was established by the District Enabling Act and is tasked with "investigat[ing] the enforcement of this Act and the rules adopted pursuant to this Act." 70 ILCS 2605/4.2, 2605/4.16. The CSB ordered the District to place Plaintiff on the District's "A" list. 2d Am. Compl. ¶ 38. The District has not done so, pending its administrative appeal of the CSB's decision. *Id.* ¶ 39.

Plaintiff alleges that Defendant rated him poorly on the performance test because of his race, and that the District's conduct towards him is part of "a longstanding, widespread pattern and practice of discrimination and a policy of deprivations of equal rights of black candidates." *Id.* ¶¶ 30, 31. Plaintiff also alleges that Foley is a policymaker who injured Plaintiff by discriminating against him. *Id.* ¶¶ 33, 34.

## DISCUSSION

When considering a motion under Rule 12(b)(6), a court must take as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). The plaintiff need not allege all of the facts involved in the claim. *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). The claim though must be supported with enough facts, taken as true,

2

that plausibly suggest that the plaintiff is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

I.      **Plaintiff's claim against the District**

Plaintiff has sued the District under 42 U.S.C. § 1983. Pursuant to § 1983, the District cannot be liable under a theory of respondeat superior. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978). A District policy itself must be the source of the discrimination. *See id.* at 691; *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734 (7th Cir. 1994). Generally speaking, claims for municipal liability are not subject to a heightened pleading standard. *See McCormick v. City of Chicago*, 230 F.3d 319, 323-24 (7th Cir. 2000) (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993)). To allege adequately a policy that violates an individual's civil rights, a plaintiff must plead facts that give rise to the plausible inference of: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice, that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Baxter*, 26 F.3d at 734-35. Plaintiff relies on both the second and third options.

   A.   **The District's Pattern and Practice**

Plaintiff alleges that the District's conduct towards him is part of a widespread practice so permanent and well-settled as to constitute a custom with the force of law. To establish a custom, the plaintiff must allege "a pattern or a series of incidents of unconstitutional conduct," not just a single incident. *Gray v. County of Dane*, 854 F.2d 179, 183 (7th Cir. 1988) (quoting *Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir. 1981)). Plaintiff alleges that the District

"intentionally discriminates against Black candidates by making sure that they do not obtain a high score on the performance test." 2d Am. Compl. ¶ 29. In support of this conclusion, Plaintiff alleges that two white candidates who were unqualified for the position of hoisting engineer nonetheless were given high scores on the examination because they were white. *Id.* ¶¶ 22-27. Plaintiff also alleges that, as of the time the discrimination occurred, the District had not hired any African-American candidates as hoisting engineers for over twenty years. *Id.* ¶ 28. These facts plausibly suggest that the District discriminates against African-American candidates in hiring hoisting engineers.

The District contends that Plaintiff has undermined his claim of a widespread practice of discrimination by availing himself of the District's internal review procedures. The existence of "workable review procedures" may indeed undermine a plaintiff's claim that a defendant has a custom of discrimination. *See* Gray, 854 F.2d at 184. In *Gray*, the plaintiff "plainly derived some measure of satisfaction" from the "County's significant efforts to address [the plaintiff's] complaints." *Id.* at 183-184. Specifically, in response to the plaintiff's first grievance about unequal salary, the defendant placed the plaintiff at a higher pay grade. *See id.* at 183. In response to the plaintiff's later harassment and retaliation complaints, the defendant reassigned her to another supervisor. *See id.* Thus, the court reasoned that the "offending officials clearly were not conforming to informal practices 'so permanent and well settled as to constitute'" a custom with the force of law. *Id.* at 184 (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

Plaintiff has not "plainly derived some measure of satisfaction" from his appeal to the CSB. The District has not placed Plaintiff on its "A" list, as ordered by the CSB. Plaintiff today is in the same position as he was when the alleged discrimination occurred. Accepting

4

Plaintiff's allegations as true, the District's review procedures do not demonstrate, in their intent or effect, that the District does not countenance discriminatory hiring practices. Accordingly, Plaintiff has pleaded adequately a custom of discrimination.

### B. The District's Policymaker

Plaintiff argues that the District is liable since Foley, its Director of Personnel, is a person with final policymaking authority. *See Baxter*, 26 F.3d at 734-35 (stating that a municipality can be liable if the plaintiff's constitutional injury was caused by an official with final policymaking authority). A person with final policymaking authority need only have such authority with respect to the actions that allegedly caused the constitutional violation. *See Kujawski v. Board of Commissioners of Bartholomew County, Indiana*, 183 F.3d 734, 737 (7th Cir. 1999) ("[O]ur task is to determine whether the official in question was a final policymaker for the local government 'in a particular area, or on a particular issue'"). Whether an official has final policymaking authority over a certain issue is a question answered by state or local law. *See Praprotnik*, 485 U.S. at 123. In total, there are four possibilities to consider as to who has final policymaking authority for the District over hiring: (1) the District's General Superintendent ("Superintendent"); (2) Foley; (3) the CSB; and (4) the District's Board of Commissioners ("Commissioners").

The first possibility is that the Superintendent has final authority to set policy for hiring. The Superintendent has the power to appoint: (1) department heads, with the consent of the Commissioners; (2) other high-level officials, upon the recommendations of the department heads; and (3) all laborers. *See* 70 ILCS 2605/4, 2605/4.11. While the Superintendent is vested with the power to make these appointments, the power to make hiring decisions is not the same as the power to set policy for hiring. *See Kujawski*, 183 F.3d at 739. The District's Enabling

5

Act does not confer upon the Superintendent the power to set this policy. In fact, the Superintendent is tasked with "*executing* the policies and goals established by the [Commissioners]." 70 ILCS 2605/4 (emphasis added). Thus, he does not have final policymaking authority.

Plaintiff contends that Foley has final policymaking authority. The District Enabling Act confers upon the Director of Personnel the power to "make rules to carry out the purposes of this Act, and for examinations . . . in accordance with the provisions of this Act." 70 ILCS 2605/4.5. Just because an official has complete authority to *administer* a unit of local government does not mean he has final *policymaking* authority. *See Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir. 1992). Foley's rule-making authority does not constitute policymaking authority; rather, the Director only has the power to make rules that execute the policies established by the Commissioners and the Act. *See* 70 ILCS 2605/4, 2605/4.5. Even more, the CSB has the power to disapprove of any rule that Foley adopts. Thus, the statute does not confer upon Foley final policymaking authority.

The third possibility to consider is whether the CSB has final policymaking authority. The CSB has the power to "investigate the enforcement of [the District Enabling Act] and the rules adopted pursuant to the Act." *Id.* at 2605/4.16. The CSB also has the authority to disapprove of a rule made by the Director of Personnel. *See id.* at 2605/4.5. However, since the Director's rules merely execute the policies established by the Commissioners and the Act, rather than set policy, the authority to disapprove of such rules likewise does not constitute final policymaking authority.

The last possibility is that the statute confers final policymaking authority, with respect to hiring, upon the Commissioners. Indeed, this is the lone plausible option. The Act expressly

6

tasks the Commissioners with "establish[ing] the policies and goals of the sanitary district." It further describes the Commissioners as having "full power to pass all necessary ordinances, orders, rules, resolutions, and regulations for the proper management and conduct of the business" of the District. 70 ILCS 2605/4. This broad authority confers upon the Commissioners final policymaking authority with respect to hiring. The analysis, however, does not end here.

Final policymaking authority need not be granted directly by statute; it can also be delegated or ratified by an official having policymaking authority. *See Kujawski*, 183 F.3d at 737. And such delegation can result from a "'custom or usage' having the force of law." *Id*. (quoting *Praprotnik*, 485 U.S. at 124 n.1). The next question then is whether the Commissioners have delegated to the Director, via a "custom or usage," their power to establish final employment policy. *Id.* Plaintiff has alleged only that "Defendant Foley is the policy-maker who exercises authority to establish hiring practices and policies." 2d Am. Compl. ¶ 34. Plaintiff has failed to allege any facts that could give rise to a plausible suggestion that the Commissioners directly or indirectly delegated their policymaking authority in this matter. Therefore, Plaintiff cannot rest his claim of a discriminatory policy on the existence of a constitutional injury caused by a person with final policymaking authority. Nonetheless, since Plaintiff has pleaded successfully the existence of a widespread discriminatory practice so permanent and well-settled as to constitute a custom, his claim against the District goes forward.

## II. Plaintiff's claim against Foley, in his official capacity

Plaintiff has brought claims against Foley in his individual and official capacities. Foley moves to dismiss the claim brought against him in his official capacity. Because the District already has been sued in this action, Plaintiff's claim against Foley in his official capacity is

redundant and therefore dismissed. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("'Official capacity' claims against officials of local government are nothing more or less than suits against the local government itself."); *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1989).

## CONCLUSION AND ORDER

The District's Motion to Dismiss as to Plaintiff's claim against the District is denied because Plaintiff sufficiently alleged a widespread practice of discrimination that constitutes a custom with the force of law. Plaintiff's claim against Foley, in his official capacity, is dismissed with prejudice because it is duplicative of the claim against the District. Wherefore, the District's Motion to Dismiss under Federal Rule 12(b)(6) for failure to state a claim is granted in part and denied in part, and Foley's Motion to Dismiss under Rule 12(b)(6) for failure to state a claim is granted.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: June 20, 2007